**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 18-118** |
| | * | |
| **Plantiff** | * | **SECTION "F" (1)** |
| **v.** | * | |
| | * | |
| **WILLIAM MCGINNESS,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

*******

**GOVERNMENT'S SENTENCING MEMORANDUM**

**Background**

Defendant William McGinness (hereinafter, "Defendant") was charged on May 31, 2018, in a five count Indictment. Thereafter, he entered into a plea agreement with the United States on December 11, 2019, pleading guilty to Count One, conspiracy, in violation of 18 U.S.C. § 371 and Count Four, knowingly making a false record concerning wildlife, in violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A).

**Legal Background**

**A. The Lacey Act - 16 U.S.C. §§ 3371-3378**

The Lacey Act, Title 16 U.S.C. §§ 3371-3378, made it unlawful for a person to "make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be (1) imported, exported, transported, sold, or received from any foreign country; or (2) transported in interstate or foreign commerce." 16 U.S.C. § 3372(d).

**B. CITES - 16 USC §§ 1538(c)(1) and (1540)(b)(1)**

The Convention on International Trade in Endangered Species of Wild Fauna and Flora, ("CITES") is an international agreement between the United States and approximately 182

countries for the purpose of ensuring that international trade in species of wild animals and plants does not threaten their survival. All import, export, re-export and introduction of the species covered by CITES has to be authorized through a licensing system. The species covered by CITES are listed in three Appendices, according to the degree of protection they need.

Appendix I includes species threatened with extinction. Trade in specimens of these species is permitted only when the export/import is not for commercial purpose as in the use in scientific research. In these exceptional cases, trade may take place only when both an import and export permit have been authorized. An export permit is required and may only be issued if the specimen was legally obtained, the trade will not be detrimental to the survival of the species, and an import permit has already been obtained.

Appendix II incudes species not necessarily threatened with extinction, but in which trade must be controlled in order to avoid utilization incompatible with their survival. An export permit or re-export certificate issued by the Management Authority of the State is required for export. In the United States, the Management Authority is the U.S. Fish and Wildlife Service ("USFWS"). A permit may be issued only if the specimen was legally obtained and the export will not be detrimental to the survival of the species.

**Factual Summary**

Defendant is a bird breeder and exporter who lives in Buena Park, California and has been in the business of raising, selling, and exporting exotic birds for over 30 years. Defendant owns and operates Bill's Birds, located at 7641 Haldor Place, Buena Park, California.

On February 11, 2015, Defendant submitted a CITES export permit application to the USFWS that falsely listed the address of Bill's Birds as 78490 Church Street, Falsom, Louisiana 70437, and included false breeder's certificates signed by two bird breeders later charged as co-conspirators. (*Exhibits A and B)* On the application, On July 8, 2015, USFWS

issued CITES Export Permit number US59064B/9 to Defendant for the shipment of 90 birds [hereinafter, "the birds", or "bird shipment"] to Taiwan. *(Exhibit C)*

In July 2015, Defendant asked a veterinarian, later charged as a co-conspirator, to sign a false Department of Agriculture veterinary health certificate ["hereinafter, "the health certificate"] which was required as part of a USFWS export package. The health certificate falsely listed the address of Bill's Birds as 78490 Church Road, Folsam LA, 70437, and falsely stated that the birds had been in quarantine for 21 days. (*Exhibit D)*

Although Defendant obtained the CITIES permit to export the birds, they could not legally be exported to Taiwan. In January 2015, due to the risk of avian flu, Taiwan placed a moratorium on the import of all California birds. (*Exhibit E*) In June 2015, in order to circumvent this moratorium, Defendant hired a freight forwarder, located in Kenner, Louisiana, to prepare paperwork and arrange the details to facilitate the smuggling of the bird shipment from the Port of New Orleans to Taiwan. The government charged the freight forwarder as a co-conspirator. Defendant listed the total value of the birds in the shipment as $132,000.

Defendant provided the freight forwarder shipping paperwork and the false health certificate that the freight forwarder used to create a USFWS export declaration form (required for export of all CITES species) and other shipping documents necessary for the export of the birds to Taiwan. Specifically, Defendant used a false Louisiana address on the paperwork instead of his correct home address in Buena Park, California so it would appear to USFWS that Defendant raised the birds in Louisiana rather than California.

On July 17, 2015, Defendant drove the birds in his van from his home in Buena Park, California to Kenner, Louisiana, arriving at the freight forwarder's facility on July 21, 2015.

On July 21, 2015, USFWS agents inspected Defendant's bird shipment at the freight forwarder's facility. On behalf of Defendant, the freight forwarder submitted the export package to USFWS. The export package contained false documents, including but not limited to the false veterinary certificate, the false breeder's certificate, and CITES Export Permit number US59064B/9, which falsely listed three macaw hybrids, CITES Appendix I species, as Harlequin macaws (*Ara Chloropterus x Ararauna*), Appendix II species.

After the inspection, the freight forwarder drove the birds to the China Airlines cargo facility at the airport in Houston Texas. When the freight forwarder arrived at the cargo facility on July 22, 2015, USFWS agents conducted a more thorough inspection of the birds. Agents discovered that that Defendant mis-labeled three crates (*Exhibit F*) containing hybrid macaws (2 Scarlet macaws and 1 Great Green macaw), (*Exhibits G and H*) CITES Appendix I birds, as if they contained Harlequin macaws (*Ara Chloropterus x Ararauna*), CITES Appendix II birds. *Exhibit F.* The Appendix I hybrid macaws are more valuable and more highly protected than the Appendix II Harlequin macaws due to the threat of extinction and they cannot be exported for commercial purposes. USFWS agents seized the mislabeled macaws as well as eleven other birds in the shipment.

On May 31, 2018, Defendant was charged with one count of conspiracy to smuggle goods out of the country in violation of 18 U.S.C. § 371, one count of smuggling in violation of 18 U.S.C. § 545, and three counts of making false records in violation of the Lacey Act,16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A). Defendant pled guilty to Count One, conspiracy, 18 U.S.C. § 371, and Count Four, knowingly making a false record concerning wildlife, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A).

## Sentencing Calculations

**A. Statutory Maximum Sentences**

The statutory maximum sentence on Count One, conspiracy, 18 U.S.C. § 371, is five years in prison, a three-year period of supervised release, a fine of $250,000 and a special assessment of $100. The statutory maximum sentence on Count Four, knowingly making a false record concerning wildlife in violation of the Lacey Act, 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A), is five years in prison, a three-year period of supervised release, a fine of $250,000, or twice the gross gain or loss, and a special assessment of $100. Restitution may be ordered for both offenses.

**B. Sentencing Guidelines**

Both Count One and Count Four relate to smuggling wildlife and the applicable guideline section is U.S.S.G. § 2Q2.1(a), which calls for a base offense level of 6.

**C. Specific Offense Characteristics**

1. Commercial Purpose - U.S.S.G. § 2Q2.1(b)(1) +2

Pursuant to USSG §2Q2.1(b)(1), if the offense was committed for pecuniary gain or otherwise involved a commercial purpose, the guidelines indicate an increase of 2 levels. In this case, McGinness received approximately $132,000 from a Taiwanese buyer for the birds. The sale was clearly a commercial transaction and an increase of two levels is warranted.

2. Failure to Quarantine - U.S.S.G. § 2Q2.1(b)(2) +2

Pursuant to U.S.S.G. § 2Q2.1(b)(2), if the offense involved fish, wildlife, or plants that were not quarantined as required by law, a two level upward adjustment in the guidelines is warranted. The veterinarian certificate signed by a co-conspirator veterinarian certified that the birds in the shipment were quarantined in Louisiana for 21 days prior to export. This certification

was false in that the birds were raised in California at Defendant's place of business until five days prior to export and were not quarantined in Louisiana for any of the required 21 days. In fact, the birds were only in Louisiana on July 21, 2015 when Defendant arrived at the freight forwarder's warehouse in Kenner, Louisiana after transporting them by truck from his home in California. Immediately after a USFWS inspection on July 21, 2015, the freight forwarder transported the birds by truck to Houston, Texas for export aboard a China Airlines flight to Taiwan. Therefore, the birds were not quarantined in Louisiana and an increase of two levels is warranted.

3. Market Value - U.S.S.G. § 2Q2.1(b)(3)(A) 2Q2.1(b)(3)(A)(ii); +8

Pursuant to U.S.S.G. § 2Q2.1(b)(3)(A)(ii), if the market value of the fish, wildlife, or plants exceeded $6,500, the offense should be increased by the number of levels from the table in U.S.S.G § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount. Defendant's invoice for the sale of the birds listed the total value of the birds as approximately $132,000. Based on the table in USSG § 2B1.1, (value exceeds $95,000 but less than $150,000), an increase of 8 levels is warranted.

4. Organizer or leader with five or more participants - U.S.S.G. § 3B1.1(a) +4

Defendant was the leader of a conspiracy that included five or more participants. The five participants, all charged as co-conspirators, were: Defendant, two bird breeders, a veterinarian, and a freight forwarder. Defendant asked two co-conspirators to sign breeder certificates to falsely certify that they sold him certain birds listed on his CITES export permit application which he submitted to USFWS. Breeder's certificates must accompany a permit application, so that USFWS can ensure that the birds to be exported were actually born in captivity rather than taken from the wild. Defendant asked a co-conspirator veterinarian to sign a false health

certificate that contained a Louisiana address for the Defendant's place of business rather than Defendant's California address, and certified that the birds in the shipment had been quarantined for 21 days in Louisiana when in fact they had not. In addition, he asked a co-conspirator freight forwarder to arrange shipment from the Port of New Orleans so that he could smuggle the birds to Taiwan in contravention of the 2015 Taiwanese moratorium on the import of California birds. Defendant drove the shipment of birds from his home in Buena Park, California to the freight forwarder's warehouse in Kenner, Louisiana where he delivered them for shipment to Taiwan. Defendant was the master-mind of the conspiracy and set all events in play in order to facilitate the smuggling of the bird shipment from the Port of New Orleans. Therefore, an increase of 4 levels for his role as a leader is warranted.

5. Acceptance of Responsibility – U.S.S.G. § 3E1.1(a) and (b) -3

A three level decrease is warranted since Defendant pleaded guilty and met the terms and conditions of U.S.S.G. § 3E1.1(a) and (b).

The Defendant's total offense level is 19.

**18 U.S.C. § 3553 factors**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more

within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The factors in 18 U.S.C. § 3553(a) that are particularly relevant in this case are: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, and (4) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

**1. The Nature and Circumstances of the Offense**

The Defendant's conduct was deliberate, deceitful and carried out strictly for his financial gain. His profit was approximately $132,000. Defendant had been in the bird trading business for over 30 years at the time of the offense. He was aware that there was a 2015 Taiwanese moratorium prohibiting the import of California birds into Taiwan. The moratorium was enacted due to the risk that California birds could be carrying extremely contagious avian flu that could infect both birds and humans in Taiwan. However, even aware of this risk, Defendant methodically constructed a conspiracy to contravene the moratorium so that he could continue to sell and export birds. Since his business was located in California, he plotted to export the birds from a state not impacted by the Taiwanese moratorium. In order to carry out this plot, he devised a scheme that would convince USFWS that the birds originated in Louisiana rather than California. During the course of the conspiracy he had co-conspirators falsify breeder's certificates needed for his CITES permit application as well as the Department of Agriculture veterinary health certificate required to export the birds. He also conspired with a freight forwarder, giving him information that they both knew was false, in order to complete the

mandatory declaration package that they later submitted to USFWS. Defendant facilitated the conspiracy to smuggle birds purely for financial gain even though he knew that the Taiwanese moratorium was for the health and safety of both animals and humans.

**2. The History and Characteristics of the Defendant**

The PSR reveals that the Defendant is married, runs his own bird business and owns a house in California. He does not suffer from financial difficulties. The Defendant had been in the business of raising and selling birds for approximately 30 years at the time of the offense and had a thorough understanding of the exotic bird trade. He certainly knew that his conduct was unlawful and potentially dangerous to animal and human health. Given these facts, his criminal activity is particularly egregious.

**3. Seriousness of the Offense**

The need for a sentence to reflect the seriousness of the crime is particularly important in cases in which protected wildlife is smuggled into the United States. The smuggling of wildlife into and out of the United States is widespread and prevention is difficult given the immense amount of merchandise transported into and out the United States on a daily basis. Defendant created and directed the smuggling conspiracy to circumvent the moratorium. He also caused the falsification of documents submitted to USFWS to obtain a CITES permit. He deliberately mis-labeled crates containing CITES Appendix I birds as Appendix II birds in order to export hybrid macaws that he could not legally export. His conduct directly contravened the purpose of CITES which is to prevent international trade in wildlife that might cause the extinction of wildlife.

**4. The Need for the Sentence Imposed to Afford Adequate Deterrence**

One of the key purposes of criminal sentencing is to deter the defendant and others from committing similar crimes. 18 U.S.C. § 3553(a)(2)(B). Defendant's criminal conduct was serious in nature as evidenced in the government's argument in paragraph number 3 - Seriousness of the offense, above. A significant period of incarceration and a fine will deter him from engaging in such conduct in the future. Given the widespread nature of wildlife smuggling, deterrence is urgently needed and such a sentence will likely deter others from engaging in similar offenses.

**Forfeiture**

The indictment contained a notice of forfeiture under the provisions of 16 U.S.C. § 3374, as made applicable by Title 28, United States Code, Section 2461. The notice was for the following items:

1. A white van, (VIN number 1GAHG39R6Y1214054) registered to William McGinness.
2. All birds seized (and not deceased) on July 22, 2015 by USFWS agents at China Airlines at the George Bush International Airport in Houston, Texas. These birds included:

   4 macaws

   8 Yellow-crowned parrots

   2 Yellow-naped parrots

**Restitution**

The government requests that Defendant be assessed restitution to be paid to the USFWS for the cost of care and housing of the birds. Since approximately July 22, 2015, the date USFWS agents seized 14 birds at the airport in Houston, Texas, the birds have been housed at

the Jackson, Mississippi Zoo. As of July, the total cost that USFWS will have paid to the Jackson Zoo is $18,000.?

**Conclusion**

The government respectfully requests that Defendant be sentenced to a term of incarceration within the range of 30 to 37 months and a fine of $250,000. According to 18 U.S.C. § 3571(d), if any person derives pecuniary gain from the offense, the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process. The total value of the wildlife Defendant caused to be smuggled out of the United States was $132,000. This is the amount the Taiwanese buyer paid Defendant and is his gain for illegal conduct. Given the seriousness of the offense, the government contends that an appropriate fine is $250,000, which is approximately double the amount of his financial gain.

The government also requests that the defendant be assessed restitution to USFWS and that he be required to forfeit the personal property set forth above.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

JEAN E. WILLIAMS
ACTING ASSISTANT ATTORNEY GENERAL
U.S. Department of Justice
Environment and Natural Resources Division

By: /s/ Mary Dee Carraway
Mary Dee Carraway
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice